1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF WASHINGTON

7     DEAN WILDERMUTH,

8                             Plaintiff,           NO:  2:14-CV-0223-TOR

9          v.                                       ORDER GRANTING DEFENDANTS'
                                                    MOTION FOR SUMMARY
10    BERNARD WARNER and MAGGIE                      JUDGMENT
      MILLER-STOUT,
11
                            Defendants.
12

13          BEFORE THE COURT is Defendants' Motion for Summary Judgment

14    (ECF No. 29).  This matter was submitted for consideration without oral argument.

15    The Court—having reviewed the parties' complete briefing, the record, and files

16    therein—is fully informed.  For the following reasons, this Court grants

17    Defendants' motion.

18    //

19    //

20    //

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

# BACKGROUND

## A. Transfer

Plaintiff Dean Wildermuth, proceeding *pro se* and *in forma pauperis*, is a Colorado offender currently housed in a Washington DOC prison.  ECF Nos. 10 at 1-2; 32-1 ¶ 1.  In July 1997, Plaintiff requested transfer to Washington "to be near [his] wife and daughter."  ECF No. 36-1 at 5.  In applying to transfer pursuant to the Interstate Corrections Compact ("Compact"), Plaintiff acknowledged that the terms of his confinement in Washington would be different than in Colorado:

> I understand and accept the confinement in another state will be different from confinement in this State. . . . In order to derive the advantages of supervision under the Interstate Corrections Compact for the Transfer of Inmates, I do hereby accept such difference in course and character of confinement as may be provided, and I do state that I consider the benefits of confinement under the Compact to be worth any adjustments in my situation which may be required.

*Id.*  Upon Plaintiff's transfer, Washington, as the receiving state, became responsible for bearing the cost of providing care for and custody of Plaintiff.  ECF No. 30-1 at 12 (Contract Between the State of Colorado and the State of Washington for the Implementation of the Interstate Corrections Compact Act) ("CO-WA Contract").

## B. Statutory Deductions

In Washington, pursuant to RCW 72.09.111 and 72.09.480, DOC inmates' funds are subject to certain non-court ordered deductions: relevant here, the Cost of

Incarceration ("COI") and Crime Victims' Compensation ("CVC") deductions. Specifically, an inmate's wages earned in the institutional work program are subject to the COI and CVC deductions, which fixed deduction formula depends on an inmate's employment. RCW 72.09.111(1). An inmate's funds received from outside sources, excluding settlements or awards from legal actions, are also subject to a 5% CVC deduction and 20% COI deduction. RCW 72.09.480(2)(a), (e).

Although Plaintiff is a Colorado offender, the deductions apply to him. Pursuant to RCW 72.09.015(17), "inmate" is defined as "a person committed to the custody of the department, including but not limited to persons residing in a correctional institution or facility . . . persons received from another state, state agency, county, or federal jurisdiction." Further, when he transferred, Plaintiff became subject to the CO-WA Contract, which, in relevant part, provides that "[i]nmates, while in the custody of the receiving state, shall be subject to all the provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed." ECF No. 30-1 at 9.

**C. Plaintiff's Claims**

Pursuant to 42 U.S.C. § 1983, Plaintiff challenges these statutory deductions made to his inmate trust account as a violation of his constitutional procedural and

substantive due process rights under the Fourteenth Amendment.[1]  ECF No. 10.  In short, Plaintiff contends that the COI and CVC deductions violate his (1) procedural due process rights because he is not given notice and the opportunity to object before the deductions to his inmate trust account are made; and (2) substantive due process rights because the statutory deductions—which compensate Washington crime victims and pay for the cost of incarcerating Washington inmates—are not rationally related to any government interest when applied to out-of-state offenders, like him.  *See* ECF Nos. 10; 32; 37.

Defendants Bernard Warner and Maggie Miller-Stout move for summary judgment on these claims, contending that (1) no additional procedures are constitutionally necessary before making the statutory deductions to Plaintiff's account; and (2) the State of Washington has a legitimate public interest in conserving taxpayer money by sharing the costs of incarceration, which Washington is responsible for covering, and compensating crime victims more generally.[2]  ECF No. 29.

---

[1] This Court previously dismissed Plaintiff's Eighth Amendment claim. ECF No. 12.

[2] While the Court granted Plaintiff's motion to file a second amended complaint, Plaintiff never filed or served this pleading on Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

# DISCUSSION

## I.    Standard of Review

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Resolution by summary judgment is proper where only questions of law are presented. *Asuncion v. Dist. Dir. of U.S. Immigration & Naturalization Serv.*, 427 F.2d 523, 524 (9th Cir. 1970); *Valley View Health Care, Inc. v. Chapman*, 992 F.Supp.2d 1016, 1029 (E.D. Cal. 2014).

Because the matter before the Court presents only questions of law, resolution by summary judgment is appropriate.

## II.    Section 1983

To establish a section 1983 claim, a claimant must prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to

1  do that 'causes' the deprivation of which the plaintiff complains.'"  *Id.* at 633

2  (brackets omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

3               **A. Statutory Deductions**

4       As a threshold issue, this Court will address Plaintiff's arguments that

5  appear to contest whether, constitutional issues aside, the deductions even apply to

6  him based on the language in the Compact, the CO-WA Contract, and Washington

7  law.

8       First, Plaintiff asserts that Defendants cannot enforce the statutory

9  deductions on out-of-state offenders because these deductions were not in effect

10  when the Compact between Washington and Colorado was executed.  ECF No. 32

11  at 3-5, 11.  However, the CO-WA Contract expressly states that inmates "in the

12  custody of the receiving state shall be subject to all the provisions of law and

13  regulations *applicable to* persons committed for violations of the receiving state

14  not inconsistent with the sentence imposed."  ECF No. 30 at 2 (emphasis added).

15  In other words, the Contract is not limited to only those laws in effect at the time of

16  its execution. To interpret otherwise would lead to the absurd result of the

17  Washington and Colorado Departments of Correction continuously having to

18  update the Contract to account for new laws and regulations in each state in order

19  for the new law to apply.  *See Hartford Fire Ins. Co. v. Columbia State Bank*, 183

20  Wash.App. 599, 608 (2014) ("[Courts] avoid interpreting statutes and contracts in

1  ways that lead to absurd results."). Accordingly, when Plaintiff transferred to

2  Washington in 1997, he became subject to all the laws and regulations applicable

3  to Washington inmates, including imposition of the COI and CVC deductions.

4          Second, Plaintiff asserts that the sending, rather than receiving, state's law

5  governs. ECF No. 32 at 5. In support, Plaintiff cites to section 2 of the CO-WA

6  Contract, which provides that "the laws and administrative rules and regulations of

7  the sending state shall govern in any matter relating to an inmate confined pursuant

8  to this contract and the Interstate Corrections Compact. ECF No. 30-1 at 5.

9  However, this provision begins with the language, "Except where expressly

10  otherwise provided in this contract or by law." *Id.* Section 17 of the Contract

11  expressly states that "[i]nmates, while in the custody of the receiving state, shall be

12  subject to all the provisions of law and regulations applicable to persons committed

13  for violations of law of the receiving state not inconsistent with the sentence

14  imposed." *Id.* at 9. Because a specific provision of a contract governs over a

15  general provision, *see Adler v. Fred Lind Manor*, 153 Wash.2d 331, 354-55 (2004)

16  ("It is a well-known principle of contract interpretation that 'specific terms and

17  exact terms are given greater weight than general language.'" (quoting Restatement

18  (Second) of Contracts § 203(c) (1981)), Plaintiff's argument is unpersuasive.

19          Third, Plaintiff asserts that if the Washington legislature intended for the

20  deductions to apply to out-of-state offenders, it could have inserted this specific

language into RCW 72.09.110.  ECF No. 32 at 8.  Plaintiff's argument is wholly

without merit as the legislature did just that.  Pursuant to RCW 72.09.015(17),

"inmate" as used throughout the section, is defined as "a person committed to the

custody of the department, including but not limited to . . . persons received from

another state, state agency, county, or federal jurisdiction."  Accordingly, it is

beyond dispute that the Washington legislature intended for these deductions to

apply to out-of-state offenders, like Plaintiff.

Fourth, Plaintiff asserts that Defendants cannot impose the deductions

because the sentencing court did not order that they be imposed.  ECF No. 32 at 9-

10.  This argument too fails as the statutory deductions are separate from court-

imposed costs.  *In re Pierce*, 173 Wash.2d 372, 383 (2011) ("Importantly, the costs

of incarceration the Department collects under RCW 72.09.111 and RCW

72.09.480 are separate from any costs of incarceration ordered in the judgment and

sentence.").  Accordingly, the deductions apply to Plaintiff.

## B. Procedural Due Process

The Fourteenth Amendment prohibits states from "depriv[ing] any person of

life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.

"Procedural due process rules are meant to protect persons not from the

deprivation, but from the mistaken or unjustified deprivation of life, liberty, or

property."  *Carey v. Piphus*, 435 U.S. 247, 259 (1978).  "Due process 'is a flexible

concept that varies with the particular situation.'" *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).

Courts analyze procedural due process claims in two steps. First, the court "asks whether there exists a liberty or property interest which has been interfered with by the State." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (internal quotation marks and citation omitted). If the court finds a protected interest, it proceeds to step two to determine what process is due. *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985). In this second step, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Vasquez*, 734 F.3d at 1042. To guide the second step of the analysis, courts consider the three-part balancing test announced in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 334-35 (1976).

### 1. Step 1: Whether Plaintiff Has a Protected Property Interest

The parties do not dispute that Plaintiff has a protected interest in the funds deposited to his inmate trust account and that this protected interest is interfered with when DOC imposes the COI and CVC deductions. *See Wright v. Riveland*,

219 F.3d 905, 913 (9th Cir. 2000) (citing *Quick*, 754 F.2d at 1523).  Having

determined that Plaintiff has a protected interest in the funds affected by the

statutory deductions, the question becomes what process is due.

### 2.  Step 2: Whether Procedures Attendant Upon Deprivation are Constitutionally Sufficient

#### a.  Private Interest

First, this Court finds Plaintiff's private interest in his funds, while not

insignificant to Plaintiff, is not substantial given the deductions at issue.  "[E]very

action affecting an inmate trust account does not necessarily implicate a substantial

private interest under the first *Mathews* prong."  *Shinault*, 782 F.3d at 1057.  As of

September 30, 2014, the DOC has deducted a total of $1,526.62 for COI and

$694.77 for CVC, which equates to approximately $89.80 for COI deductions and

$40.87 for CVC deductions per year in light of Plaintiff's time in Washington

DOC custody.  ECF No. 10 at 16; *see Sickles v. Campbell Cty., Ky.*, 501 F.3d 726,

730 (6th Cir. 2007) (holding that $20 and $110.27 sums "do not begin to approach

the kinds of government conduct that have required a predeprivation hearing, such

as a limitation on the historic right to maintain control over one's home or the

termination of government benefits, which for many people are the very means by

which to live" (internal quotation marks, brackets, and citations omitted)).

Accordingly, this factor does not weigh in favor of additional procedures.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

### b. Risk of Erroneous Deprivation and Probable Value of Additional Safeguards

Second, this Court finds the risk of erroneous deprivation on Washington's statutory deductions scheme is negligible and additional safeguards would have little value.  Importantly, the statutory deductions are non-discretionary.  *See id.* (holding that the risk of erroneous deprivation is minor where the accounting is non-discretionary).  For both wages and outside funds, the statutory scheme sets fixed percentages to be deducted for COI and CVC deductions.  *See* RCW 72.09.111(1), 72.09.480(2).   Accordingly, because the routine, non-discretionary deductions under the statutory scheme carry little risk of resulting in an erroneous deprivation and would not benefit from additional safeguards, this factor does not weigh in favor of additional procedures.

### c. Government's Interest

Finally, this Court finds the government's interest in imposing these deductions is substantial and additional procedures would be unduly burdensome.  For one, the government's interest in conserving taxpayer resources by sharing incarceration costs is substantial.  Further, the state has a significant public interest in supporting crime victims.  Finally, it would undoubtedly be a significant administrative burden to conduct pre-deprivation hearings each time the deductions were imposed, especially where such additional safeguards have an insignificant

benefit. Accordingly, this factor also weighs against imposing additional procedures.

### d. Balancing *Mathews* Factors

In light of the minimal private interest at stake, the small risk of error, the minimal benefits of additional safeguards, and the substantial governmental interests at stake, this Court finds additional procedures are not constitutionally required. In making this finding the Court notes that while Plaintiff retains his due process rights while imprisoned, this fact "in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Importantly, Plaintiff had notice that the statutory deductions would apply to him. In 1997, Plaintiff applied to transfer from Colorado to Washington and, in so requesting, consented to "such differences in course and character of confinement as may be provided," ECF No. 36-1 at 5, and voluntarily subjected himself to the Compact and CO-WA Contract, including the provision applying the laws of the receiving state to inmates, ECF No. 30-1 at 9. The government also highlights that the DOC Policies were available to Plaintiff upon his incarceration. Plaintiff's initial ignorance of the law and DOC policies does not negate the notice provided to him and opportunity to object at that time.

//

### e.  Post-Deprivation Remedies

Additionally, Plaintiff was provided adequate post-deprivation remedies. DOC inmates, like Plaintiff, are provided an accounting of their deductions and may challenge the deductions through prison grievance procedures or by filing a tort claim with the state.  *See Zinermon*, 494 U.S. at 132 ("[I]n situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake . . . postdeprivation remedies might satisfy due process.'); *see Wright*, 219 F.3d at 918 (holding that Washington's grievance process and tort suit provide adequate post-deprivation remedies for unauthorized deductions from a prisoner's account).  In fact, Plaintiff took advantage of both these procedures.  ECF Nos. 32-7; 32-8.  His frustration seems to lie in his confusion over what due process protects: Plaintiff is not protected from the deprivation of his protected property interest but the mistaken or unjustified deprivation thereof.  *Carey*, 435 U.S. at 259.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's procedural due process claim.

### C. Substantive Due Process

The Fourteenth Amendment also protects individuals from the arbitrary deprivation of their protected interests.  "Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this

presumption is overcome only by a 'clear showing of arbitrariness and irrationality.'" *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994). In conducting this inquiry, the Court looks to whether the legislation "advances *any* legitimate public purpose" and "if it is at least fairly debatable that the [legislative] decision . . . was rationally related to legitimate governmental interests." *Id.* (emphasis added) (internal quotation marks omitted). The plaintiff bears the "extremely high" burden of showing that a statute is arbitrary and irrational. *Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997).

This Court finds Defendants are entitled to judgment as a matter of law on Plaintiff's substantive due process claim because the deductions under RCW chapter 72.09 are "rationally related to the legitimate government interests of curtailing the costs of incarceration and compensating victims of crime." *In re Metcalf*, 92 Wash. App. 165, 176 (1998).

### 1. COI Deductions

First, regarding the COI deductions, the state has a legitimate governmental interest in conserving taxpayer resources by sharing the costs of incarceration. While Plaintiff is a Colorado offender, Washington bears the cost of providing for his care and custody while he is housed in Washington. ECF No. 30-1 at 12 ("[E]ach state shall bear the cost of providing care and custody of the inmate sent

1    to it.").  The COI deductions, which are "deposited in a dedicated fund with the

2    department and . . . used only for the purpose of enhancing and maintaining

3    correctional industries work programs," RCW 72,09.111(7), are rationally related

4    to Washington's legitimate interest in preserving taxpayer funds that would

5    otherwise go to its prison systems.  *See Pierce*, 173 Wash. 2d at 384-85, 387

6    (noting that the legislature granted the DOC authority to collect non-court-ordered

7    costs of incarceration "in the wake of an escalating prison population and run-away

8    costs" and to help effectuate the policy that inmates "have a personal and fiscal

9    obligation in the corrections system").  Accordingly, Plaintiff has not met the

10    "extremely high" burden of demonstrating that the COI deductions do not advance

11    any legitimate public purpose.

12            **2.  CVC Deductions**

13        Second, regarding CVC deductions, the state has a legitimate governmental

14    interest in compensating crime victims.  Although Plaintiff is a Colorado offender

15    and thus he does not have a Washington victim, this does not negate Washington's

16    legitimate interest in assisting crime victims in general.  *See McCoy v. Clarke*, No.

17    CV-05-5036-AAM, 2005 WL 1979141, at *4 (E.D. Wash. Aug. 16, 2005) ("The

18    fact, however, that the deducted money does not go directly to [plaintiff's] victims,

19    or to his state (Maryland), does not defeat the legitimate interest Washington has in

20    assisting crime victims in general, regardless of their states of residence. Indeed

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

none of the fees collected from inmates can be said to actually and exclusively go to the specific victims of their crimes."). The CVC deductions, which are deposited into a special crime victims' compensation account, RCW 7.68.045, are rationally related to Washington's legitimate interest in providing for victims of crime. Accordingly, Plaintiff has similarly failed to meet the "extremely high" burden of demonstrating that the CVC deductions do not advance any legitimate public purpose.

### D. Revocation of *In Forma Pauperis* Status

Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one, and good faith is demonstrated when an individual "seeks appellate review of any issue not frivolous." *See Coppedge v. United States,* 369 U.S. 438, 445 (1962). For purposes of 28 U.S.C. § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

This Court finds that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact. Accordingly, the Court revokes Plaintiff's *in forma pauperis* status.

//

//

**ACCORDINGLY, IT IS ORDERED**:

1.  Defendants' Motion for Summary Judgment (ECF No. 29) is **GRANTED**.

2.  Plaintiff's *in forma pauperis* status (ECF No. 6) is **REVOKED**.

3.  The District Court Executive is directed to enter this Order, enter **JUDGMENT** for Defendants, provide copies to the parties, and **CLOSE** the file.

**DATED** May 4, 2016.



THOMAS O. RICE
Chief United States District Judge